ROISE R. MILLER, et al. v. H. C. MARTIN.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, October 13, 1929.

150

Ely & Buhl, of Knoxville,·for plaintiff in error.

Kennerly & Key, and Joel H. Anderson, all of Knoxville, for defendant in error.

PORTRUM, J. This is an action for malicious prosecution. The declaration alleges, on or about January 6, 1928, the defendant, H. C. Martin wrongfully and maliciously procured a warrant, falsely charging the plaintiff with the crime of removing an automobile, purchased from the defendant under a conditional sales contract, from the State of Tennessee, without the written consent of the defendant and in violation of the conditional sales statute. It also charges that as a consequence of the issuance of this warrant, the plaintiff was arrested in Houston, Texas, and incarcerated in jail and held for a period of forty-eight hours, when he was released by order of the Attorney-General of Knoxville County, Tennessee. Further, that the arrest damaged plaintiff in his business and reputation, for all of which he sues.

The declaration alleges that the plaintiff purchased said car from the defendant, or his agent, for the express purpose of taking it without the State of Tennessee and into a number of different States in the Union, for the purpose of exploiting and selling a certain electrical device, which was well known to and approved by the defendant when the plaintiff purchased the automobile.

To the declaration the defendant entered a plea of not guilty.

The case went to trial before the judge and a jury and the plaintiff attempted to prove that he purchased the automobile from the defendant with the express purpose of taking it out of the State; that the defendant knew this and consented to it. The learned Circuit Judge declined to hear this testimony and excluded it from the jury, on the theory that the testimony was an attempt to add to or vary the terms of a written conditional sales contract and also that the statute involved required the written consent of the vendor. Exceptions to the rulings of the trial judge were preserved.

The plaintiff also attempted to show that by reason of his arrest the daily newspapers gave the charge wide publicity; also that the defendant had gone to the plaintiff's mother to induce her to pay the deferred payments on the car. This likewise was excluded.

The testimony of the attorney-general was that he conferred with counsel representing the defendant in the criminal prosecution while the defendant was under arrest in Houston, Texas, on a warrant sworn out before a Justice of the Peace, and that due to the conversation they took the matter up before the criminal judge, when the prosecutor was advised that the prosecution would be unsuccessful, and to avoid an accumulation of costs for which the State would be liable, the attorney-general declined, with the advice of the criminal judge, to further prosecute the charge. This was introduced for the purpose of showing the determination of the prosecution. The trial judge excluded this testimony. The plaintiff rested his case, and the defendant moved for peremptory instructions, which were granted, and the case dismissed. Plaintiff moved for a new trial and prosecuted an appeal to this court.

The first question raised is one of practice. It is insisted that since the plaintiff in error failed to assign that there was no evidence to support the verdict, he cannot be heard upon his assignment going to the exclusion of the evidence. This question is raised by a motion to affirm the judgment.

Under the Constitution, the jury is the judge of the facts arising in the case, so if there be any evidence upon which a jury can base a verdict, it will be assumed it based it upon this evidence. But it is for the court to say whether or not there is any evidence. The purpose of this rule is to hold inviolate the function of the trial jury. But the holdings of the court in enforcing this rule are presupposed upon the theory that there is no error which denied the jury the right to hear and determine material evidence. So in the case of an incorrect and erroneous charge, the court will look to the evidence, in the absence of an assignment that there is no evidence to support the verdict, to see if the charge prejudiced the case. Loveman & Co. v. Bayless, 128 Tenn., 319, 160 S. W., 841. Under this rule, it would be the court's duty to examine the excluded testimony first, to determine if it is relevant and material; finding it so, then it is the court's duty under the practice, as established in Loveman & Co. v. Bayless, supra, to examine the evidence introduced on the trial to see if the action of the trial court in excluding the material evidence was prejudicial.

Counsel for plaintiff in error readily concede, in the state of the record, that there is evidence to support the verdict, and asked why should they be required to do a foolish thing, i. e., make an assignment they know is not well made. The motion to affirm is overruled.

The first assignment of error goes to the action of the trial judge in excluding the evidence of the attorney-general, J. Fred Bibb. The assignment set out long excerpts from his testimony which was excluded. We have stated that the testimony was introduced for the

152

purpose of showing that the prosecution before the Justice of the Peace had been terminated. There was no court record of its termination and there never would be. The only way the plaintiff could possibly show that it had in fact terminated was to introduce intrinsic facts. He was asked:

"Q. In declining to prosecute this matter and in taking the action which you say you did take, why was that? A. I thought under the affidavit there that I had and under the facts and also under the authorities that there was no offense committed.

"Q. I will ask you to state whether or not Judge Stooksbury was of the same opinion and so expressed it in the presence of counsel for Mr. Martin? A. He was.

"Q. Did you also after that decline to act after you had fully heard Mr. Key representing Mr. Martin? A. Yes, sir, . . ."

We are of the opinion that this evidence was competent to show that the attorney-general and criminal judge had terminated the prosecution. This we think the attorney-general had a right to do. See Shannon's Code, Dismissal of Criminal Actions, section 7154-5, and Maudlin v. Ball, 104 Tenn., 598, 58 S. W., 248.

The second assignment complains to the action of the trial judge in excluding evidence of the publication concerning him appearing in the Knoxville Sentinel, to-wit:

"Sheriff Anderson and Esquire John L. Mynatt left Tuesday for Houston to bring back two prisoners, W. D. Wakl and R. R. Miller, on a charge of illegally taking the car of H. C. Martin out of this State. It was reported at the sheriff's office today that the sheriff was expected to return tomorrow night."

We are of the opinion that this evidence is material and relevant as showing a natural consequence of a malicious prosecution, if the prosecution be found to be malicious, and establishes an element of damage or injured reputation.

The third assignment complains of the exclusion of the testimony of the witness, Mr. Meeman, the managing editor of the Knoxville News-Sentinel, who testified that it was the custom of both newspapers to obtain information of prosecutions in criminal and other courts in the county of Knox, including actions before Justices of the Peace and the courts of record. Since the publication was made, we are unable to see why the custom in making the publication is relevant in an action between Miller and Martin. It may tend to establish the good faith of the Knoxville News-Sentinel but not the bad faith of H. C. Martin. This assignment is overruled.

The fourth assignment complains at the exclusion of the evidence offered by the plaintiff in which he attempted to exhibit articles appearing in the News-Sentinel concerning him. We think this testimony was competent for the reasons stated under the assignments touching the first article.

The fifth assignment complains at the exclusion of the evidence given by plaintiff who undertook to detail his conversation at the time of the sale of the car, and to show that the car was sold to him for the express purpose of being removed from the State and being used by the plaintiff in the sale of an electrical device over wide territory. The Circuit Judge excluded this testimony on the ground that it attempted to vary, add to or change a written instrument.

The issue in this case was not the validity of the written instrument nor its contents. The inquiry was, Had the plaintiff in fact committed a crime? and did the defendant have probable cause to institute and prosecute a criminal charge against him? The written instrument had a provision that it should not be removed out of Knox county, and said nothing as to the removal of the car out of the State. Our statutes provides that it cannot be removed out of the State without the written consent of the vendor. The parties agreeing that it might be used in Texas and other States, undertook to make the instrument conform to the agreement by striking out the phrase that it should not be removed from Knox county. Had the provision been written in the instrument that it could not be removed out of the State without the written consent, it would also have been stricken out, treating the plaintiff's evidence as true, as we must do when the verdict has been directed against him. The trial court held that the law wrote the latter provision into the contract, that the plaintiff would not be permitted to give oral evidence contradicting it. We think this was error because, as said above, the issue was not as to the contents of the writing, but the guilt or innocence of the plaintiff, as well as the grounds upon which the defendant acted negativing probable cause. A defendant has the constitutional right to establish his innocence in any proceeding where his guilt is in issue. And, if necessary, the common-law rule of evidence must give way to this constitutional right. But we do not think it is necessary to establish any new rule of evidence, if the same can be considered a new rule, for the common-law rule of evidence is that the facts when pertinent to another issue are admissible for that purpose.

"Effect limited to parties; The exclusive memorial supplants the parties' conduct and utterance, exterior to the document, so far only as to take away their effect as a legal act for the same purpose as the document, but leaves unimpaired their legal effect for any other purpose. Hence, such other conduct and utterances may be given legal effect.

"(1) As to the same parties, and other legal relationships;

"(2) And as to other parties, and any legal relation not controlled by the document.

"Illustration: (1) A passes over B's land; a deed by B to A has granted A a right of way for five years, but the period has elapsed. A's claim to a right of way, under an oral agreement for ten years, not five, would be disposed of by the terms of the deed. But A's defense of leave and license, in an action of trespass, could be supported by the oral license to B, except so far as B may have revoked it." 'Wigmore on Evidence, sec. 1939.

The learned trial judge erred in excluding the evidence.

The plaintiff was entitled to prove any expenses incurred by him because of the prosecution.

The last assignment of error to be considered by us is as to the action of the trial judge in excluding the testimony of Mrs. Sarah Miller, mother of the plaintiff. She attempted to testify that Mr. Martin came to see her at her home, and tried to induce her to pay the deferred payments on the car, she testifying:

"I am satisfied it was a $600 note, I just said to them, when they did that, 'no, I wouldn't do nothing like that,' I says, 'you were supposed to bring the note here for $50 for the first payment on this car and give me seven days to get in connection with the boys and then if the money wasn't on the note and they couldn't send it, I would pay it, and they didn't either one answer me (Mr. Martin and Mr. Key),' and then Mr. Key told Mr. Martin, says, 'well, we will have to go and do what we said;' and I said, 'well.' "

The purport of this testimony is that if she didn't pay the notes, her son would be prosecuted. We think this testimony material and relevant as throwing light upon the good faith and probable cause in the prosecution. It might also tend to negative a defense that ·the defendant relied upon advice of counsel, for if the defendant used the prosecution for the purpose of compelling the mother to discharge the debt of the son, then it would be a question for the jury to say whether he acted upon this impulse or legal advice. The court erred in excluding this testimony.

Our next inquiry is whether or not the excluded testimony prejudiced the case of the plaintiff. It is insisted by the· defendant that if the plaintiff was in fact guilty, then his guilt is a complete defense to an action for malicious prosecution.

"An action for malicious prosecution will not lie at the instance of the guilty party; upon proof of actual guilt, the existence of probable cause is conclusively presumed, as a matter of law." 26 Cyc., 26.

"It has frequently been held that the plaintiff in an action for malicious prosecution must, notwithstanding his acquittal in the original prosecution, always be regarded as tendering the issue of his innocence, and must fail in his action if that innocence can be disproved, whether the prosecutor acted from malicious motives or

not, and whether or not he knew of the facts establishing the plaintiff's guilt. Evidence tending to show the actual guilt of the plaintiff is, therefore, always admissible in favor of the defendant." 18 R. C. L., 58.

The defendant insists that since the plaintiff removed the car out of the State without the written consent of the vendor, that he is guilty of a felony, notwithstanding the fact that the car was originally purchased for that very purpose and the vendor, through his agent, actively participated in the sale by using this fact as an inducement to the sale.

In support of this contention, the case of Pappas v. State, 135 Tenn., 500, 188 S. W., 52, is relied upon. In that case it was held that by the Laws of 1909, chapter 557, section 1, making it unlawful to remove from the State any personalty, the title to which was retained at the time of sale, unless written consent of the seller is obtained, having omitted the words "knowingly" or "wilfully," does not require intent to defraud as an element of the offense, but the bare removal, even if in good faith, constitutes the offense. In that case the vendee removed the property to another State without the knowledge of the vendor. He relied upon his good faith in the matter as a defense. The case, while it appears to be inclusive yet recognizes that not all removals without the written consent of the vendor are felonies. The court said:

"But we do not mean to hold that the mere carrying of such property out of the State, temporarily, or incidentally in the ordinary, and contemplated use of it, by the conditional purchaser, without any purpose of permanently removing it beyond the limits of Tennessee, would constitute an offense under this statute."

The excluded evidence in this case tends to establish the fact that the car was removed temporarily and as an incident to the ordinary and contemplated use, and without any purpose of permanently removing it beyond the limits of the State. Therefore, if the jury believes the testimony of the plaintiff, it would be well warranted in concluding that this case falls within the paragraph quoted of the Pappas case, supra.

It is clear, then, that the exclusion of this testimony prejudiced the plaintiff. Both elements have been made out: first, the evidence was relevant and material; and, second, its exclusion prejudiced the case of the plaintiff.

The judgment of the circuit court, for the reasons stated, is reversed, and the case is remanded for a new trial. The defendant will pay the costs of the appeal.

Snodgrass and Thompson, JJ., concur.