**Bruce SADEK, Plaintiff–Appellant,**

v.

**NASHVILLE RECYCLING CO., A Tennessee Corporation, Mark Sheridan, and Wayne Adams, Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

March 9, 1988.

Petition to Rehear Denied by
Supreme Court May 23, 1988.

Edward Hiland, Nashville, David King, Franklin, for plaintiff-appellant.

Ed R. Davies, Nashville, William Nelms, Murfreesboro, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

The plaintiff has appealed from a directed verdict and judgment dismissing his suit against the captioned defendants for malicious prosecution.

The only issue presented on appeal is the correctness of the directed verdict.

Plaintiff and the defendant, Nashville Recycling Company, are competitors in the business of recycling used cooking fat obtained from restaurants and other large users of cooking fat. Defendants, Mark Sheridan and Wayne Adams are officers of Nashville Recycling Company.

In general, the method of operation of recyclers is to negotiate an agreement with a user of fat whereby the recycler's containers are placed on the user's premises so that the user may dump his waste fat into such containers. Periodically, the recycler will pick up filled containers, pay the user for the contents, and place empty containers on the premises.

One of the suppliers or "customers" of plaintiff was Richard Drury, owner of Kentucky Fried Chicken of Murfreesboro, Tennessee. At some time prior to May 18, 1978, plaintiff's wife received a telephone

call from Mr. Drury requesting that Mr. Sadek retrieve his container from Kentucky Fried Chicken and pay for ¾ drum of grease therein. Mr. Drury also stated that he was changing recycling services and would thereafter do business with Nashville Recycling Company. On May 18, 1978, plaintiff went to the premises of Kentucky Fried Chicken at about 4:30 a.m. He found two of his own drums, one empty and one ⅓ full of grease. He also found drums belonging to Nashville Recycling Company with grease in them. Mr. Sadek testified that he transferred enough grease from the Nashville Recycling drum to his own drum to fill his drum ¾ full. Shortly after leaving the premises of Kentucky Fried Chicken, plaintiff was stopped by a police officer, who was accompanied by the defendant Wayne Adams, and who ordered him to go to the police station. Upon arrival at the police station, plaintiff was arrested upon a warrant signed by Wayne Adams and released upon $500.00 appearance bond. Thereafter, the General Sessions Judge "bound over" defendant to the Grand Jury, requiring him to give an appearance bond to appear in Criminal Court.

█ Even though defendants have admitted the successful termination of the prosecution, plaintiff still bears the burden of proving that the prosecution was initiated without probable cause. This remains unproven. Indeed, the reverse is proven. Plaintiff admits that he removed a quantity of grease from a container marked as the property of Nashville Recycling Company and put said removed grease into his own (plaintiff's) container on his truck before driving away from the scene. It is difficult to conceive of a set of circumstances which would constitute more probable cause to believe that larceny had been committed.

Nevertheless, plaintiff proposes a bizarre explanation by which he seeks to negative the direct evidence of probable cause.

Plaintiff alleges, but does not prove, that he was "set up", or entrapped. It is not denied that the defendants hired a police officer to watch the scene of the removal of the grease and that one of the defendants accompanied the officer. It is not denied that defendants suspected the plaintiff of other thefts and that they hoped to catch him in the act. Certainly the owner of property cannot be faulted for watching his property to catch a thief and to enlist the aid of police in this endeavor. Such surveillance does not prevent observed larceny from being larceny or prevent actual observation of apparent larceny from being probable cause to prosecute for larceny.

Plaintiff further alleges, but does not prove, that the grease which he apparently stole was not stolen, but belonged to him. The basis of this allegation is that plaintiff's wife told him that Mr. Drury, owner of Kentucky Fried Chicken, had told her that plaintiff was to pay him for ¾ drum of grease. From this double hearsay, the jury (and this Court) are expected to infer that Mr. Drury had placed ¾ drum of grease in plaintiff's container. Even if this inference (or surmise) be indulged, the question is whether the ¾ drum of grease became the property of plaintiff when placed in plaintiff's container or when it was later paid for (after being taken away by plaintiff). Plaintiff insists that the grease which he took out of defendants' container did not belong to defendants because it had not been paid for. If this be true, then the grease missing from plaintiff's container did not belong to plaintiff but to Mr. Drury until plaintiff paid Mr. Drury for it.

█ Where a buyer places his container on the premises of the seller for the purpose of receiving fungible goods, when the seller places such fungible goods in the container of the buyer, such goods have been "identified to the contract" and the buyer thereby receives title, or at least a "special interest" in the goods. See T.C.A. §§ 47-2-401, 47-2-501. *Rawls v. Patterson*, 60 Tenn. (1 Baxt.) 372 (1872); *Barker v. Reagan*, 51 Tenn. (4 Heisk) 590 (1871); *Bush v. Barfield*, 41 Tenn. (1 Cold.) 92 (1860).

█ Accordingly, *if* the employees of Mr. Drury placed some grease in the container of plaintiff, that grease would doubtless be appropriated or identified to the contract and would become the property of

plaintiff. By the same token, grease placed in the container of defendants' would become their property.

Indulging the inference or surmise that the grease allegedly missing from plaintiff's container was his (plaintiff's), plaintiff is not thereby relieved of his guilt of theft, for the grease which he took from the container of defendant was the property of defendant.

Plaintiff insists that he did not take the property of defendants, but that he took grease belonging to Mr. Drury which had not yet become the property of defendants. Plaintiff argues that, since he was expected to pay Mr. Drury for ¾ drum of grease, he had a right to take ¾ drum of Mr. Drury's grease so as to get what he was to pay for. This reasoning is baseless for, as previously demonstrated, the grease in defendants' container was not Mr. Drury's but defendants'.

An even more bizarre excuse is offered by plaintiff as follows:

In a malicious effort to discredit and malign plaintiff, defendants conspired to induce plaintiff to incriminate himself. The plan, as conceived (but not proved) by plaintiff was that, having ascertained that there was ¾ drum of grease in plaintiff's container and that Mr. Drury had notified plaintiff that he was expecting plaintiff to pay for ¾ drum of grease, defendants removed the ¾ drum of grease from plaintiff's container to the container of defendants and placed a pickle bucket for plaintiff's convenience in refilling his container from that of defendants. With the exception of the presence of the pickle bucket, no other elements or actions of the conspiracy are proven. There is simply no other evidence to support this theory of plaintiff.

Actual malice is a circumstance supporting an action for malicious prosecution, but mere expressions of ill will will not support an imaginary conspiracy such as that proposed by plaintiff.

■ Malice alone is insufficient to sustain an action for malicious prosecution because a person actuated by malice may nevertheless profer a well-founded accusation and have justifiable reason for the prosecution of the cause. *Wheeler v. Nesbitt*, 65 U.S. 544, 24 Howard 544, 16 L.Ed. 765 (1860).

■ The action for malicious prosecution is only intended to apply to cases where criminal accusation has been made against an innocent man through malice, and in the absence of even a fair and reasonable probability of its truth. *Raulston v. Jackson*, 33 Tenn. (1 Sneed) 128 (1853).

■ An action for malicious prosecution will not lie at the instance of the guilty party. Upon proof of actual guilt, the existence of probable cause is conclusively presumed. In an action for malicious prosecution, notwithstanding his acquittal in the original prosecution, the plaintiff must be regarded as tendering the issue of his innocence, and must fail in his action if that innocence is disproved, whether the prosecutor acted from malicious motives or not and whether or not he knew of the facts establishing the plaintiff's guilt. *Miller v. Martin*, 10 Tenn.App. 149 (1929) and authorities cited therein. See also 54 C.J.S., Malicious Prosecution § 66(b) p. 590; 52 Am.Jur.2d Malicious Prosecution § 176, p. 236, § 180, p. 299.

■ A plaintiff's verdict cannot be based upon speculation, conjecture, guesswork, a mere spark, glimmer or scintilla of evidence. *Daniels v. White Consol. Industries, Inc.*, Tenn.App.1985, 692 S.W.2d 422; *Bowers v. Potts*, Tenn.App.1981, 617 S.W.2d 149, and authorities cited therein.

■ A case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence. There must be some evidence of a material and substantial nature. *Moon v. Johnston*, 47 Tenn.App. 208, 337 S.W.2d 464 (1960) and authorities cited therein.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiff-appellant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS, J., concurs.

KOCH, J., concurs separately.

KOCH, Judge, concurring.

I concur with the majority's opinion only insofar as it pertains to the existence of probable cause.

In order to succeed in a malicious prosecution action, the plaintiff must prove that the defendant lacked probable cause when it initiated the criminal prosecution against the plaintiff. *Kinnard v. Frierson*, 190 Tenn. 304, 306, 229 S.W.2d 348, 349 (1950). Based upon my independent evaluation of the proof, I have determined that reasonable minds could only conclude that the defendants had a good faith belief that the plaintiff had stolen their used cooking fat when they initiated the criminal prosecution against him.

Having failed to prove the lack of probable cause, the plaintiff has failed to prove all the elements of his case. It follows that the trial court's decision to grant the defendants' motion for directed verdict was correct.